UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:22-CV-00266-CHB-CHL

DAMIAN D. on behalf of A.C., a minor,[1]                                                    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,                                                    Defendant.

## REPORT AND RECOMMENDATION

Before the Court is the Complaint filed by Plaintiff Damian D. on behalf of A.C. ("Claimant"), a minor.[2]  Claimant seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner").  (DN 1.)  This case was referred to the undersigned Magistrate Judge to prepare a report and recommendation.  (DN 10.)  Claimant and the Commissioner each filed a Fact and Law Summary.  (DNs 11, 13.)  Therefore, this matter is ripe for review.

For the reasons set forth below, the undersigned recommends that the final decision of the Commissioner be **AFFIRMED**.

## I.    BACKGROUND

On or about October 11, 2018, Claimant's representative filed an application for supplemental security income ("SSI") on Claimant's behalf alleging disability beginning on June 19, 2015.[3]  (R. at 21, 91, 94, 107, 199-204.)  On August 11, 2020, Administrative Law Judge ("ALJ") Steven Collins ("the ALJ") conducted a hearing on Claimant's application.  (*Id.* at 18-

---

[1] Pursuant to General Order 23-02, the Plaintiff in this case is identified and referenced solely by first name and last initial.

[2] The undersigned will use the term "Claimant" to refer to A.C. on whose behalf Plaintiff Damian D. brought the instant application for benefits.

[3] Though the Plaintiff in this case is Damian D., the application was originally filed on Claimant's behalf by Donna D., Claimant's guardian and great aunt.  (R. at 39, 199-204.)

35.)   In a decision dated December 29, 2020, the ALJ engaged in the three-step sequential evaluation process promulgated by the Commissioner to determine whether a child is disabled. (*Id.* at 18-35.)   In doing so, the ALJ made the following findings:

1.   The claimant . . . was a preschooler on October 11, 2018, the date application was filed, and is currently a school-age child.   (*Id.* at 22.)

2.   The claimant has not engaged in substantial gainful activity since October 11, 2018, the application date.   (*Id.*)

3.   The claimant has the following severe impairments: Attention Deficit Hyperactivity Disorder (ADHD), incontinence, functional neurologic disorder, conversion disorder, anxiety, and tethered cord syndrome status/post release.   (*Id.*)

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.   (*Id.*)

5.   The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings.   (*Id.* at 23.)

6.   [T]he claimant has not been disabled, as defined in the Social Security Act, since October 11, 2018, the date the application was filed.   (*Id.* at 29.)

Through his representative, Claimant subsequently requested an appeal to the Appeals Council, which denied his request for review on March 23, 2022.   (*Id.* at 1-6, 195-98.)   At that point, the ALJ's decision became the final decision of the Commissioner.   *See* 20 C.F.R. § 422.210(a) (2022); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision).   Pursuant to 20 C.F.R. § 422.210(c), Claimant is presumed to have received that decision five days later.   20 C.F.R. § 422.210(c).   Accordingly, Claimant timely filed this action on May 17, 2022.   (DN 1.)

## II.   DISCUSSION

The Social Security Act (the "Act') authorizes payments of SSI to persons with disabilities. *See* 42 U.S.C. §§ 1381-1383f.   Under the Act, an individual under age eighteen is considered

"disabled" if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" 42 U.S.C. § 1382c(a)(3)(C)(i); *see also* 20 C.F.R. § 416.906 (2022).

### A.      Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards.  42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).  "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way").  However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

### B.      Three-Step Sequential Evaluation Process for Evaluating Disability in Children

The Commissioner has promulgated regulations that set forth a three-step sequential evaluation process that an ALJ must follow in evaluating whether a child is disabled for purposes

of SSI benefits.  20 C.F.R. § 416.924 (2022).  In summary, the evaluation process proceeds as follows:

(1)     Is the child involved in substantial gainful activity?  If the answer is "yes," the child is not disabled.  If the answer is "no," proceed to the next step.

(2)     Does the child have an impairment or combination of impairments that is severe?  If the answer is "no," the child is not disabled.  If the answer is "yes," proceed to the next step.

(3)     Does the child have an impairment or combination of impairments that meets, medically equals, or functionally equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1 and satisfies the duration requirement?[4]  If the answer is "yes," the child is disabled.  If the answer is "no," the child is not disabled.

20 C.F.R. § 416.924(a).

## C.     Claimant's Contentions

Claimant challenged the ALJ's numerical findings nos. 4 and 5 containing the ALJ's step three findings regarding whether Claimant had an impairment or combination of impairments that met, medically equaled, or functionally equaled the criteria within 20 C.F.R. Part 404, Subpart P, Appendix 1 (collectively the "Listings"; individually a "Listing").[5]  (DN 11.)  The undersigned will address these findings and Claimant's arguments related to the same separately below.

### 1.     Finding No. 4 – Meeting the Listings and Medical Equivalence

In his numerical finding No. 4, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled any impairment in the Listings.  (R. at 22.)  In doing so, the ALJ specifically considered whether Claimant met the requirements of Sections 11.00/111.00 and 12.00/112.00 of the Listings and found that he neither

---

[4] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months.  20 C.F.R. § 416.909 (2022).

[5] Claimant also challenged the ALJ's numerical finding no. 6 in which the ALJ ultimately found Claimant not disabled. (DN 11, at PageID # 2555.)  As Claimant raised no separate arguments regarding finding no. 6 except for those raised as to findings nos. 4 and 5 above, the undersigned will include no separate analysis of the same.

4

met nor medically equaled those Listings.  (*Id.* at 22-23.)  There are two parts to the Listings.  Part A of the Listings relates primarily to adults and contains descriptions "of the major body systems impairments that [the Social Security Administration] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience"; it is only used in cases involving children if the listed "disease processes have a similar effect on adults and children." 20 C.F.R. § 416.925(a), (b)(1) (2022).  Part B of the Listings "describes impairments that cause marked and severe functional limitations" for children and is always utilized first in evaluating disability in children.  *Id.* at § 416.925(a), (b)(2)(i).  An impairment must satisfy all criteria of a given listing to "meet" the listing; a diagnosis alone is insufficient.  *Id.* at § 416.925(d).  An impairment may also qualify as disabling if it "medically equals" a listed impairment meaning "if it as at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. § 416.926(a) (2022).  Medical equivalence can be demonstrated in three ways:

> (1) the claimant has a listed impairment but does not exhibit the specified severity or findings, yet has "other findings" that are "at least of equal medical significance" to the criteria; (2) the claimant has a non-listed impairment that is "at least of equal medical significance" to a listed impairment; or (3) the claimant has a combination of impairments which do not individually meet a Listed Impairment, but are "at least of equal medical significance" to a listing when viewed in totality

*Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 n.2 (6th Cir. 2011) (quoting in part 20 C.F.R. § 416.926 and 20 C.F.R. § 404.1526).  The claimant must point to specific findings that either duplicate the enumerated criteria of the listed impairment to "meet" the Listing or that demonstrate equivalency.  *Lawson v. Comm'r of Soc. Sec.*, 192 F. App'x 521, 529 (6th Cir. 2006); *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004) ("When a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence

which describes how the impairment has such equivalency."). In the other words, the claimant bears the burden of proving his or her impairment satisfies all the specified criteria in a given Listing or is equivalent to a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990).

Claimant argued that ALJ's finding was in error because the ALJ did not consider all the evidence in the case record as required and cited certain records he claimed the ALJ did not consider. (DN 11, at PageID # 2549.) Specifically, Claimant argued that the ALJ failed to consider the diagnoses contained in and the behavior described in records from the University of Louisville Bingham Clinic and a Whitten Psychological Services June 29, 2020, evaluation of Claimant. (*Id.* (citing R. at 1495-97, 2234-36).) As a starting point, the undersigned emphasizes that "[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)); *see also Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand."); *Bayes v. Comm'r of Soc. Sec.*, 757 F. App'x 436, 446 (6th Cir. 2018) (quoting in part *Loral Def. Sys.-Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999)) (noting that "the ALJ was not required to explain every piece of evidence in the record" and that "an 'ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party' "). As noted by the Commissioner, the ALJ cited elsewhere in his decision the specific University of Louisville and Whitten Psychological Services Records Claimant alleged the ALJ did not consider in his analysis supporting finding no. 4. *See* R. at 21 (citing *id.* at 2234-2237) (noting that Exhibit 36F was added to the record after the hearing); *id.* at 26 (citing *id.* at 1488-1515) (noting that in early 2018, "claimant had psychogenic non-epileptic seizures

characterized by a period of unresponsiveness that aborted with ammonia salts"); *id.* at 28 (citing *id.* at 1488-1515) (noting that "[i]n accordance with the regulations, the [ALJ] did not provide articulation about evidence that is inherently neither valuable nor persuasive" except that the ALJ did consider "the recommendation that appropriate academic accommodations be added to the claimant's IEP"). Given the ALJ's specific citation to these exhibits elsewhere in his decision, the undersigned finds that Claimant has failed to demonstrate that these records were not at least considered as required.

Claimant also argued that the ALJ erred in not evaluating whether Claimant met or medically equaled Listings 111.02 and 112.07 citing in support to *Reynolds v. Commissioner of Social Security.*[6] (DN 11, at PageID # 2550-53 (citing *Reynolds*, 424 F. App'x at 416).) Claimant argued that the ALJ provided an insufficient discussion of the Listings he did consider, Listings 11.00/111.00 and 12.00/112.00, and in particular an insufficient discussion of Listings 111.02 and 112.07. (*Id.*) Given that there are so many potential Listings, the regulations do not require an ALJ to address every Listing in his or her findings. *Sheeks v. Comm'r Soc. Sec. Admin.*, 544 F. App'x 639, 641 (6th Cir. 2013). If "the record 'raise[s] a substantial question as to whether [the claimant] could qualify as disabled' under a listing, the ALJ should discuss that listing." *Id.*

---

[6] Claimant also cited in support to 20 C.F.R. § 416.926a and SSR 09-1p. (DN 11, at PageID # 2549.) The relevance of these authorities to the ALJ's numerical finding no. 4 is not apparent to the undersigned as both address *functional equivalence*, which is the subject of the ALJ's numerical finding No. 5. *See* 20 C.F.R. § 416.926a(a) (2022) ("If you have a severe impairment or combination of impairments that does not meet or medically equal any listing, we will decide whether it results in limitations that *functionally equal* the listings.") (emphasis added); SSR 09-1p, 74 Fed. Reg. 7527, 7527 (Feb. 17, 2009) ("This SSR provides policy interpretations and consolidates information from our regulations, training materials, and question-and-answer documents about our 'whole child' approach for determining whether a child's impairment(s) *functionally equals* the listings.") (emphasis added). Thus, the undersigned will do no specific analysis of these authorities as it relates to Claimant's arguments regarding the ALJ's numerical finding no. 4.

Regarding 20 C.F.R. § 416.926a, while that regulation appears to have been amended effective April 21, 2021, the amendments were to subsection m, which Claimant did not cite in his brief. *Compare* 20 C.F.R. § 416.926a(m) (2022), *with* 20 C.F.R. § 416.926a(m) (2020). As the changes are not dispositive of the outcome of Claimant's case, the undersigned will cite solely to the most recent version of the regulation in the remainder of this recommendation.

(quoting *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)); *see also Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014). A "substantial question" requires the claimant to "point to specific evidence that demonstrates [he or she] reasonably could meet or equal every requirement of the listing." *Smith-Johnson*, 579 F. App'x at 432. The regulations do not specify how much discussion an ALJ must provide regarding those Listings as to which a substantial question is raised. However, the Sixth Circuit has held regarding an ALJ's Listing analysis that an ALJ must "actually evaluate the evidence, compare it to . . . the [relevant] Listing, and give an explained conclusion, in order to facilitate meaningful judicial review." *Reynolds*, 424 F. App'x at 416. As to the ALJ's general discussion of and citation to Listings 11.00/111.00 and 12.00/112.00, the undersigned finds that Claimant has not demonstrated reversible error. Claimant's general criticism fails to demonstrate a "substantial question" about whether Claimant met any of those Listings as required. To find otherwise would require the undersigned to do necessary analysis as to each of the many individual Listings in Listings 11.00/111/00 and 12.00/112.00 for the Claimant—including providing numerous relevant citations to the record—in an impermissible matter. Instead, the undersigned will only consider whether Claimant raised a substantial question as to the specific Listings 111.02 and 112.07 addressed by Claimant in his brief.

Listing 111.02 provides:

111.02 Epilepsy, documented by a detailed description of a typical seizure and characterized by A or B:

A. Generalized tonic-clonic seizures (see 111.00F1a), occurring at least once a month for at least 3 consecutive months (see 111.00F4) despite adherence to prescribed treatment (see 111.00C); or

B. Dyscognitive seizures (see 111.00F1b) or absence seizures (see 111.00F1c), occurring at least once a week for at least 3 consecutive months (see 111.00F4) despite adherence to prescribed treatment (see 111.00C).

20 C.F.R. Pt. 404, Subpt. P., App. 1, § 111.02 (eff. Mar. 27, 2017 to Apr. 1, 2021).  Claimant argued that as to certain records summarized in his brief, the "symptomatology presents adequate evidence to require an evaluation, comparison to and an explained conclusion of why [Claimant] does not equal or functionally equal a listing or combination of listings."  (DN 11, at PageID # 2552.)  The undersigned presumes that the Claimant meant "medically equals" not "functionally equals" given that the latter is the subject of the ALJ's numerical finding no. 5, not no. 4 about which the Claimant was arguing in the relevant section of his brief quoted.  In his analysis as to Listings 11.00/111.00, the ALJ noted that "[t]he evidence of record does not document the complete loss of function or disorganization of motor function in two extremities" required by those Listings.  (R. at 23.)  Claimant did not specifically dispute this conclusion.  Instead, he pointed to records that he claimed required the ALJ to do a more fulsome analysis under *Reynolds*, by which the undersigned presumes Claimant meant those records created a substantial question as to the applicability of Listing 111.02.  Claimant's cited records include a September 11, 2018, "EM Note Report" from Centerstone; a February 18, 2019, letter from providers at the Bingham Clinic to Claimant's school; a May 14, 2019, review of notes on a prior outpatient treatment plan dated November 12, 2018, from Centerstone; an October 22, 2019, "Accommodations Determination Form" from Claimant's elementary school; an April 14, 2020, neurology progress note from a visit to Norton Children's Medical Group; a June 29, 2020, psychotherapy intake note from Whitten Psychological Services; an August 11, 2020, "EM Note" from Seven Counties; a September 2, 2020, therapy note from Seven Counties; and a September 8, 2020, progress note from an office visit to Norton Children's Neurology.  (DN 11, at PageID # 2549-52 (citing R. at 550, 586-87, 976, 981, 1035-37, 1495-97, 2234-36, 2241-42, 2283-84, 2305, 2309-10).)  Though Claimant cited to only portions of these records, the undersigned has considered the records in

their entirety and based on the same finds that they do not create a substantial question as to whether Claimant met Listing 111.02.  Though a few of the records contain a description of what are described as "seizure-like events," none of the records document generalized tonic-clonic seizures or dyscognitive/absence seizures in the frequency required by the Listing.  (R. at 550-52, 586-87, 976-82, 1034-38, 1495-98, 2234-37, 2240-46, 2283-85, 2305-11.)  The relevance of these events is even disputable as to Listing 111.02 because the introductory material to the 111.00 Listings specifically notes that the Social Security Administration "do[es] not count psychogenic nonepileptic seizures or pseudo seizures under Listing 111.02." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 111.00F(4)(e).  Additionally, none of these records documented that Claimant's particular type of "seizure-like events" occurred despite adherence to prescribed treatment for the requisite period as required by the Listing.  (R. at 550-52, 586-87, 976-82, 1034-38, 1495-98, 2234-37, 2240-46, 2283-85, 2305-11.)  Based on these failures, Claimant's specified records do not create a substantial question as to whether he met Listing 111.02.  Therefore, Claimant has not demonstrated that ALJ should have specifically discussed that Listing in his analysis at all, let alone in more detail than the ALJ did provide.

As to the issue of medical equivalence with Listing 111.02, the undersigned finds Claimant's argument opaque.  Not only did Claimant fail to clearly articulate that he was arguing medical equivalence as set forth above, he also did not specifically indicate which of the three pathways to medical equivalence he was invoking.  It is Claimant's burden to point the Court to medical findings demonstrating equivalence.  *Sullivan*, 493 U.S. at 531.  In the absence of Claimant providing any such evidence, the undersigned likewise cannot find that Claimant has raised a substantial question as to the issue of medical equivalence that mandated further exploration by the ALJ as it relates to Listing 111.02.

Listing 112.07 provides:

112.07 Somatic symptom and related disorders (see 112.00B6), for children age 3 to attainment of age 18, satisfied by A and B:

> A. Medical documentation of one or both of the following:
>
> > 1. Symptoms of altered voluntary motor or sensory function that are not better explained by another medical or mental disorder; or
> >
> > 2. One or more somatic symptoms that are distressing, with excessive thoughts, feelings, or behaviors related to the symptoms.
>
> AND
>
> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 112.00F):
>
> > 1. Understand, remember, or apply information (see 112.00E1).
> >
> > 2. Interact with others (see 112.00E2).
> >
> > 3. Concentrate, persist, or maintain pace (see 112.00E3).
> >
> > 4. Adapt or manage oneself (see 112.00E4).

20 C.F.R. Pt. 404, Subpt. P., App. 1, § 112.07 (eff. Mar. 27, 2017 to Apr. 1, 2021). A "marked" limitation is defined as one where a claimant's " impairment(s) interferes seriously with [his/her] ability to independently initiate, sustain, or complete activities" and "is the equivalent of the functioning [one] would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is defined as one where a claimant's "impairment(s) interferes very seriously with [his/her] ability to independently initiate, sustain, or complete activities" and "is the equivalent of the functioning [one] would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id.* § 416.926a(e)(3)(i). While an "extreme" limitation "is the rating [ ] give[n] to the worst limitations," even it "does not necessarily mean a total lack or loss of ability to function." *Id.*

The ALJ found that the Claimant did not have "ongoing limitations throughout the entirety of the period required by Section 12.00/112.00."[7]  (R. at 23.)  The ALJ also found that Claimant's mental impairments did not cause two marked or one extreme limitation in the paragraph B criteria as required, finding that Claimant had mild to moderate limitations in understanding, remembering, and applying information; interacting with others; and concentrating, persisting, and maintaining pace and a marked limitation in adapting or managing himself.  The ALJ explained,

> As discussed later in this decision, the claimant has significant deficits in adaptive functioning and a persistent lack of danger awareness that warrants marked limits in adapting or managing himself. However, his school records and the teacher questionnaire indicate he has typically been on grade level at school, he exhibits benefit with ADHD medication with some issues in the afternoons, and he gets along with others.

(*Id.* (citing *id.* at 223-31, 535-605, 608-23, 661-88, 942-87, 995-1262, 1862-2233, 2238-2311).) Pointing to the same records he emphasized in relation to Listing 111.02, Claimant argued that the ALJ should have included a discussion compliant with *Reynolds* as to Listing 112.07.  (DN 11, at PageID # 2550-52 (citing R. at 550, 586-87, 976, 981, 1035-37, 1495-97, 2234-36, 2241-42, 2283-84, 2305, 2309-10).)

The Commissioner conceded that Claimant met the requirements of paragraph A of Listing 112.07 given the ALJ's finding that Claimant's conversion disorder was a severe impairment.  (DN 13, at PageID # 2569.)  However, the undersigned concludes that discussion of the paragraph A criteria is unnecessary both because Claimant did not specifically address them and because the ALJ's discussion of the paragraph B criteria is supported by substantial evidence.  As noted above, both the paragraph A and the paragraph B criteria must be present in order for a claimant to meet

---

[7] The only "period" referenced in Section 112.00 is that in order to meet the Paragraph C criteria of Listings 112.02, 112.03, 112.04, 112.06, and 112.15, a claimant's "mental disorder must be 'serious and persistent'; that is, there must be a medically documented history of the existence of the disorder over a period of at least [two] years."  20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 112.00A(2)(C); *id.* at § 112.00G(2).

Listing 112.07.  The ALJ cited to numerous records to support his conclusions with respect to the degrees of limitation he assigned to the various paragraph B criteria.  (R. at 23 (citing *id.* at 223-31, 535-605, 608-23, 661-88, 942-87, 995-1262, 1862-2233, 2238-2311)).)  He also specifically referenced his analysis "[a]s discussed later in this decision."  (*Id.* at 23.)  The Commissioner contended that it is always appropriate for a court to look elsewhere in an ALJ's decision to find support for his or her Listing analysis.  (DN 13, at PageID # 2567.)  The undersigned disagrees.  While some unpublished Sixth Circuit cases have found that a court may properly look to the ALJ's analysis elsewhere in the decision to assess what the ALJ considered at step three, others discourage speculating as to the ALJ's analysis.  *Compare Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) ("The mere failure to discuss every single impairment under the step three analysis is not a procedural error."), *and Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 466 (6th Cir. 2014) ("[T]he ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three."), *and Smith-Johnson*, 579 F. App'x at 435 ("It also is proper to consider the ALJ's evaluation . . . at other steps of his decision . . . ."), *with Harvey v. Comm'r of Soc. Sec.*, No. 16-3266, 2017 WL 4216585, at *6 (6th Cir. Mar. 6, 2017) (noting that while the district court looked elsewhere in the ALJ's opinion to see what medical evidence the ALJ had cited, "[t]he district court should not have speculated what the ALJ may have concluded had he considered the medical evidence under the criteria in Listing 1.02").  In the absence of a clear general rule in published, binding authority, the undersigned concludes that whether or not it is generally appropriate, given the ALJ's specific incorporation of his later discussion in his findings here regarding the paragraph B criteria, it is appropriate for the undersigned to look to the incorporated discussion as part of determining whether the ALJ's conclusions are supported by substantial evidence.  In doing so, the ALJ's abundant citations to Claimant's medical and

education records render his discussion sufficiently supported by substantial evidence, the threshold for which is "not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) ("Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations.  And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.").  While Claimant may have pointed to other records he claimed support an opposite conclusion, this Court's role is not to second-guess the ALJ's conclusions.  *Gayheart*, 710 F.3d at 374; *Smith*, 893 F.2d at 108; *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).  This is exactly what Claimant's argument would require.  The ALJ does not appear to have misrepresented or selectively cited the record.  Instead, as is his province, he weighed the evidence in the record and relied upon what he found important.  Claimant's cited records do nothing more than provide potential support for an opposite conclusion.  Thus, the undersigned concludes that Claimant has failed to raise a substantial question as to whether he met Listing 112.07 that would have required further or more comprehensive discussion by the ALJ under *Reynolds* than what is already included in the ALJ's decision.

As to the issue of medical equivalence with Listing 112.07, as with Listing 111.02 above, the undersigned finds Claimant's argument regarding the same much less than developed enough to merit further discussion.  Claimant again failed to clearly reference medical equivalence or to specifically indicate which of the three pathways to medical equivalence he was invoking as to this particular Listing.  He also did not clearly articulate how the records he cited demonstrated equivalence.  In the absence of the same, the undersigned likewise cannot find that Claimant has

raised a substantial question as to the issue of medical equivalence that mandated further exploration by the ALJ as it relates to Listing 112.07.

For these reasons, the undersigned finds the ALJ's finding no. 4 supported by substantial evidence and that Claimant has failed to demonstrate any reversible error in the same.

### 2.   Finding No. 5 – Functional Equivalence

In his numerical finding no. 5, the ALJ found that Claimant did not have an impairment or combination of impairments that functionally equaled the Listings.  (R. at 23.)  In assessing whether a child has an impairment or combination of impairment that functionally equals the Listings, an ALJ considers the degree of limitation caused by a claimant's impairment(s) in six broad areas of functioning called domains.  20 C.F.R. § 416.926a(b)(1).  The six domains are (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being.  *Id.* at § 416.926a(b)(1)(i)-(vi).  A child's impairment(s) must result in marked limitations in two domains or an extreme limitation in one domain, defined as set forth above, to result in a finding that an impairment or combination of impairments functionally equals the Listings.  *Id.* at § 416.926a(a).  In assessing the domains and the degree of a child's limitation in each, the ALJ is "look[ing] at how appropriately, effectively, and independently [the claimant] performs [his or her] activities compared to the performance of other children [the claimant's] age who do not have impairments."  *Id.* at § 416.926a(b).

Here, the ALJ found that Claimant had no limitation in the first domain of acquiring and using information; a marked limitation in the fifth domain of the ability to care for himself; and less than a marked limitation in all other domains including attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and health and

physical well-being.  (R. at 24.)  To support his conclusion, the ALJ relied on numerous medical records and other evidence in the record.  (*Id.* at 24-29.)  Claimant argued that "[t]he record as a whole d[id] not support the ALJ's conclusion that [Claimant] does not have at least two marked limitations in the six domains of functional equivalence."  (DN 11, at PageID # 2552.)  He specifically argued that the ALJ should have found greater limitations in the third domain of interacting and relating with others, the fifth domain of caring for himself, and the sixth domain of health and physical well-being.  (*Id.* at 2552-55.)  The undersigned will consider each of these arguments below.

In the third domain of interacting and relating with others, the ALJ found that Claimant had less than a marked limitation.  (R. at 27.)  He noted that Claimant's great aunt had testified regarding limitations in this area and that "[C]laimant's teacher reported slight problems in this domain."  (*Id.* (citing *id.* at 36-77, 211-21, 223-31).)  The ALJ noted other records suggested trouble with other students and speech issues, including stuttering.  (*Id.* at 27 (citing *id.* at 312-17).)  The ALJ emphasized, however, that recent records suggested fewer problems than those previously reported including records supporting Claimant "is involved with classroom activities and [ ] interacts with others," documenting "no communication skill concerns," noting that Claimant didn't qualify for speech therapy, and noting Claimant had speech that was "typical in comparison to same age peers."  (*Id.* at 27 (citing *id.* at 656-60, 942-52, 988-1262, 1862-2109).)  The ALJ generalized that despite "some behavior issues and defiance," Claimant's behavioral health treatment records document "no remarkable challenges in social skills among his peers." (*Id.* (citing *id.* at 535-605, 661-88, 767-828, 1263-1410, 1516-1795, 1805-61, 2110-2233, 2238-94, 2312-2505).)  The ALJ noted Claimant's recent diagnosis of autism. (*Id.* at 27 (citing *id.* at 2295-2311).)   The ALJ concluded, "Overall, given the [C]laimant's sociability at school,

combined with no evidence of remarkable challenges in social skills, marked or extreme limitations are not warranted." (*Id.* at 27.) Citing some of the same records cited by the ALJ, Claimant argued that greater limitation was warranted based on issues at school. (DN 11, at PageID # 2555 (citing R. at 550, 560, 586).) Comparing those records to those cited by the ALJ, the undersigned concludes that Claimant is ignoring the ALJ's admission that Claimant has had some behavior issues and wants the Court to elevate the importance of the records Claimant cited in a way inconsistent with the ALJ's analysis. To do so would be improper and require the undersigned to reweigh the evidence. Courts have held repeatedly that a reviewing court's role in determining whether an ALJ's decision is based upon substantial evidence is not to "resolve conflicts in evidence or decide questions of credibility." *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 253 (6th Cir. 2016) (citing *Ulman*, 693 F.3d at 713). The undersigned finds that the ALJ supported the degree of limitation he found in the third domain with substantial evidence, and thus, Claimant's arguments do not demonstrate reversible error.

In the fifth domain of caring for himself, the ALJ found that Claimant had a marked limitation. (R. at 25.) The ALJ noted Claimant's great aunt's reports and testimony regarding Claimant's need for assistance with bathing and feeding himself as well as his inability to accept criticism, obey safety rules, and that he sometimes smears feces on the walls. (*Id.* (citing *id.* at 36-77, 211-21).) The ALJ noted that this testimony was consistent with other records regarding Claimant's functioning that indicated he "smears feces on the wall at times," "is unable to write his name," "is very messy with food," has "sensory issues," and has "significant deficient in adaptive skills." (*Id.* at 25 (citing *id.* at 953-87, 995-1262, 1862-2109, 2295-2311).) He recounted that Claimant's teacher and school records both documented problems with using judgment regarding his personal safety, impulse control, and recognizing danger. (*Id.* at 25 (citing *id.* at

223-31, 988-94, 1862-2109).)  He noted that this was consistent with outpatient behavioral health records, which "indicat[ed] that the [C]laimant has poor impulse control, he has boundary issues, he needs self-care reminders, and he has issues with acting reckless and putting himself into danger." (*Id.* at 25 (citing *id.* at 535-605, 661-88, 2110-2233, 2238-94).)  The ALJ concluded, "Given the claimant's continuing self-care deficits, combined with his lack of danger awareness, marked limitations are warranted. However, given some improvement, combined with the teacher report, 2019 occupational therapy evaluation, and school records, extreme limitations are not warranted." (*Id.* at 223-31, 942-87.)  Claimant argued that the ALJ should have found an extreme limitation in this domain instead of a marked limitation.  (DN 11, at PageID # 2552-54.)  He cited in support to records that he claimed supported that level of limitation but as with the domain above, his citations do not sufficiently call into question the evidence relied on by the ALJ so as to find that the ALJ failed to support his decision with substantial evidence.  (*Id.* (citing R. at 314, 1034, 1037-38, 1495-99, 2045, 2234-36, 2240-42, 2283-84).)  In particular, the undersigned finds Claimant's repeated citation to records regarding the "periods of unresponsiveness" from which Claimant had to be revived with ammonia salts unavailing.  As noted by the Commissioner, these episodes were limited in time and the medical records stated they had resolved.  (DN 13, at PageID # 2573-74.)  Thus, it is unclear how these records impacted the ALJ's conclusion regarding improvements in Claimant's functioning later in 2019.  The undersigned concludes that to adopt Claimant's view of events would entail reweighing the evidence of record in an improper manner. The ALJ's cited evidence supported his conclusion and did not misrepresent the record. Accordingly, the undersigned finds the ALJ's decision regarding domain five supported by substantial evidence.

In the sixth domain of health and physical well-being, the ALJ found that Claimant had less than marked limitations.  (R. at 25-26.)  He summarized at the outset that "given evidence of improvement with a regular voiding schedule and subsequent to tethered cord release, and intermittent somatic complaints, marked or extreme limitations are not warranted in this domain." (*Id.* at 25.)  He noted that Claimant's ADHD medication improved things and that in 2019, an "occupational therapy evaluation observed that claimant did not have toileting concerns at school despite home concerns."  (*Id.* at 26 (citing *id.* at 953-87).)  He noted improvements in Claimant's urinary and fecal incontinence after surgery and with a timed voiding schedule.  (*Id.* at 26 (citing *id.* at 343-413, 624-43, 995-1262, 1411-87, 1805-61, 2295-2311).)  He noted the occurrence of the non-epileptic seizures Claimant substantially relied upon but emphasized that they resolved.  (*Id.* at 26 (citing *id.* at 312-17, 829-61, 995-1262, 1411-1515).)  He documented that Claimant's teachers reported that two episodes were created by Claimant to get out of schoolwork.  (*Id.* at 26 (citing *id.* at 1516-1657).)  He recounted that despite reported issues with insomnia, there seemed to be a behavioral component.  (*Id.* at 26 (citing *id.* at 1862-2109, 2312-2505).)  Claimant criticized the ALJ for not noting the that periods of non-epileptic events were "lengthy" and argued it was error for the ALJ not to explain "why these do not represent serious events."  (DN 11, at PageID # 2555.)  But Claimant did not dispute the ALJ's finding that the issues resolved over a year prior to the hearing  in his case.  Overall, again, the undersigned finds the Claimant's arguments amount to no more than an attempt to get this Court to reweigh the evidence.  The undersigned declines to do so given that the ALJ supported his discussion and conclusions with significant and accurate citations to the record constituting substantial evidence.

Having rejected all Claimant's arguments regarding the ALJ's numerical finding no. 5, the undersigned concludes that the same is supported by substantial evidence and that Claimant has failed to demonstrate reversible error.

## III.   RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that final decision of the Commissioner be **AFFIRMED**.

Colin H Lindsay, Magistrate Judge
United States District Court

May 18, 2023

cc:   Counsel of Record

### Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations. A copy shall forthwith be electronically transmitted or mailed to all Parties. 28 U.S.C. § 636(b)(1)(C). Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations. Fed. R. Civ. P. 72(b)(2). Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal. *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).